This is the Veterans Administration, Mr. Carpenter. Is this your first day? No. I've got to record it. Thanks. Go ahead. May it please the Court. Senator Carpenter appearing on behalf of Mr. Claiborne Jones. Mr. Jones appeals the decision of the Veterans Court regarding its extension of this Court's rule of law on the implicit denial of pending claims to pending appeals. We discussed that yesterday, didn't we, Mr. Carpenter? Not pending appeal. It's true. It was an implicit denial rule, but a little different context. A little different context. In this context, Your Honor, we're dealing with a… Well, why wouldn't it apply in an appeal context? The same as a pending claim? Yeah, exactly. Because a pending appeal is controlled by statute, by 38 U.S.C. 7105, and Congress has imposed explicit duties on the VA when they receive, as they did in this case, a timely notice of disagreement. Mr. Jones filed a timely notice of disagreement with the February 1974 decision of the VA denying his original… Of course, you've got to get around Williams. How do you get around Williams? I don't believe we have to get around Williams, Your Honor, because Williams applies to pending claims just as the implicit denial rule applies to pending claims. Neither this Court nor the Court below have addressed pending appeals in the context of pending claims under the implicit denial rule until this case. Other than the statutory difference, which I'm not sure I quite see why that is terribly significant, but put that aside. Other than the statutory difference, is there any policy difference between the rule of Adams and Williams, which seems to me to be a kind of specific example of Adams, depending on how you look at it. Is there any policy difference between bringing finality to the claims and bringing finality to the pending appeals? They both have the same problem of little pieces left over that the VA hasn't tidied up but can get swept in as long as there is adequate notice to the veteran. Isn't that the underlying principle of Adams and Williams? That's correct. Make sure, or at least if you can see, adequate notice having been given. Why isn't that equally true at the Board of Appeals level? Well, in this case it's probably because the decision relied upon by the Court below is a 1986 Board decision. A 1986 Board decision was not subject to any appellate review. Therefore, any implied notice that he would have gotten that his 1973 claim had been disposed of by a Board decision dealing with reopening in 1986 was of no value because that was the end of the line in 1986. He had no appellate review in 1986. Appellate review did not become available until 1988, and even in 1988 required a jurisdictionally conferring notice of disagreement. So the process, the policy, I believe, Your Honor, is that the... He had appellate review at the Board level in 1986. Isn't that right? He had appellate review of the question of reopening, Your Honor. The 1986 statement of the case dealt with reopening. The statement of the case in that case is in the record at page 38, and then the Board decision is in the record at page 45. And if you'll note in the identification of the issues at page 38, it says whether there was new and material evidence had been presented to establish nervous condition previously denied. When you're dealing with new and material evidence, you're dealing with a 5108 question of jurisdiction as to whether or not the VA was obligated to reopen. The Board in 1986 never got to the merits because they determined that there was not new and material evidence and therefore did not have to get to the merits. But you're making a factual appeal here, and the 2006 Board said that the 1986 Board had dealt with his appeal. And they were incorrect, Your Honor. The 1986 Board dealt with an appeal of the denial of reopening, and not the denial of even reopening of the 1974 decision, but denial of reopening of a 1977 decision. What we're talking about- But now that's a factual argument that the 2006 Board is incorrect, isn't it? No, that's a legal argument. It is a question of law as to whether or not the 1986 Board decision could or did or did not, as a matter of law, reach the merits of the appeal initiated in February 1974. The appeal initiated was the denial on the merits of his claim for service connection. What was adjudicated by the Board in 1986 was the question of whether or not he had or had not submitted new and material evidence. That is a jurisdictional question and not a question of the resolution of the merits. And then you get back to the significance of 7105, which is 7105 expressly says to the VA, you must inform the veteran as to the reasons for your decision. There's no document in this record that informs the veteran of the reasons for its decision in February of 1974 for the basis for their denial of service connection. Therefore, he is without the benefit of the precise expectation imposed upon the VA by Congress in 7105. Further, 7105 indicates that one of two things is supposed to happen. The appeal is supposed to be granted or the appeal is supposed to be withdrawn. And if neither of those two events occur, then the VA must submit to the veteran a statement of the case. That fact is not in dispute. So it's a question of law when you have a pending appeal, whether that pending appeal under the rule established by the court below Myers should control. That that pending appeal stands until the appeal is resolved. And this appeal on the merits was not resolved until the 1995 Board decision when they did favorably resolve the appeal on the merits. If there's not any further questions from the panel, I'll reserve the balance of my time for rebuttal. Oh, I'm sorry. I did have one point. Sure. The Board in 2006 says the 1986 Board decision addressed all the evidence of record at that time and made, essentially, a merits determination. And that is a misstatement of law. You cannot make an essential decision of the merits of the claim when the merits of the claim were not before the Board. The only way the merits of the claim would have been before the Board is had the Board found under 1580 that there had been a submission of new material evidence. So that is simply a misstatement of law as well as evidence. Well, in order to determine that there was no more material evidence, they had to look at the record, didn't they? Yes, they did, Your Honor. And I believe if you'll review the text of the 1986 decision, it starts at page 38. But that's why I say it strikes me as more a misstatement of fact and that the question you're thus raising is a question of fact or at least application of law to fact. Well, we're dealing with a rule of law here, a rule of law created by this Court of implicit denial. That rule of law is subject to an application of law to fact reviewed by this Court. So that is not an exclusion from this Court's jurisdiction. So when you look to the factual underpinnings for whether that rule was or was not correctly applied, this Court does have jurisdiction under this Court's case in Morgan. Mr. Gardner, I don't always follow all of the intricacies of these things that you lead us through so ably and impressively. But let me be sure I understand exactly what the question is before us. It seems, are there two questions? One of them is whether the rule of Williams, which says in effect at the R.O. level a decision now can subsume an undecided issue earlier. The question is whether that same concept should be applied at the Board of Appeals level. That's one issue, isn't it? Yes. The other issue is even if you do that, it seems to me you're making an argument that even if you apply Williams at the Board of Appeals level, it shouldn't apply here because they never actually made a decision that would count as a subsuming type decision of the earlier undecided question. That would be correct. Do I have the two things you're arguing? I believe that's correct. Restatement, yes. Thank you. Okay. I followed you. Thank you very much. Thank you. Mr. Austin. Thank you, Your Honor. May it please the Court. The Veterans Court correctly extended this Court's decision in Williams and the Veterans Court's decisions in both Juarez and Ingram to this case to reach its conclusion that the Board's decision in 1986 was sufficient to place Mr. Jones on notice that his 1973 claim for service connection for nerves was being denied. Do you agree, Mr. Austin, that the two points that Mr. Carpenter and I identified right at the end of his presentation are the two issues that arise in this case?  Let's take the first one first. Certainly. Is there any particular reason why we should extend Williams to the Board of Appeals level? Well, there's every reason to extend Williams to the Board of Appeals level because the same policy that, as Your Honor indicated in your question early on to counsel, that applied in Williams would apply to a decision that's upon appeal to the Board. That is that the key factor in Williams is whether or not the claimant was placed on notice by the decision. Williams, remember, is really almost identical in this case. In Williams, there was a 1977 claim that was filed and then later a 1978 claim, and only the 1978 claim was decided. There was no mention of the 1977 claim because there was an error, as in this case, that it was overlooked. Yet what the court focused upon on Williams is that the merits of the 1978 claim were the same as the merits of the 77 claim, and therefore the claimant was placed on notice by the 1978 decision that his claim for service connection was being denied. That is precisely what happened here. When the 1986 Board decision came down and decided on the merits that there was no service connection for post-traumatic stress disorder or the nervous condition, and therefore the claim that was filed in 73 was subsumed by that decision. But you know what's troublesome and what's troublesome throughout is here we're talking about a matter of procedural law, and we're interpreting it quite rigorously, strictly, and in a way that turns out to be adverse to the veteran. We know the veterans are not permitted to have legal representation at that stage, and therefore the statutes are precise in instructing, whether it's the RO or the Board or along the path, to say just where things stand and what needs to be done next. Now here we have a case which is not unsympathetic. If you look at the way it has evolved, one can look at the eventual decision as perhaps saying we made a mistake. Nobody had heard of post-traumatic stress disorder at the time that the veteran said he had nerves. So that perhaps he has an argument if one ever gets to the substance retroactively, retrospectively, with the knowledge of today's medicine. And this is really, I think, in my mind, the concern if we impose a rule of deemed denied or deemed notified or anybody would have known, and at the same time we prohibit legal representation at that stage. Your Honor, and that's why this Court in Williams insisted upon the fact that there be a merits determination. But there was none. There was a merits determination. If Your Honor would look at the 1986 decision and the conclusion of the Board in 1986, and specifically at Joint Appendix page 55, this was the conclusion of the Board in 1986. Yes, but the veteran is looking for earlier dates. Right, but the decision was there. Entitlement to service connection for a nervous condition to include a post-traumatic stress disorder is not established. Elsewhere in the decision, a nervous condition or other acquired psychiatric disorder, including post-traumatic stress disorder, was not incurred in or aggravated by service. This Court correctly insisted in Adams, correctly insisted in Williams, that the claimant be placed on notice that his claim was being denied. The Board did that in 1986. The Board in 1986 carefully went through all of the evidence that existed in this case, not just from the time that the claim that it stated it was directly reviewing, but from the onset of his service, went through all his service records, went through all his hospitalizations immediately after service in 1975 and 1976, looked at all the evidence, and concluded there was no service connection. Your Honor, it's quite correct that the standards for post-traumatic stress disorder changed over time. And Your Honor, it's quite correct that the claimant was entitled to have that looked at. It was looked at in this case. The claimant was given the benefit of the doubt. And all these issues were considered in 1986 and decided as merits. Well, but it was also determined that, in fact, that was the issue and that he was entitled to compensation. In 1995. And so because of not having complied with the technicalities earlier, obviously service connection had to have been determined as an undisputed fact now before us. Well, it was decided in 1995, based upon new evidence that came in in 1991, that there was a service connection. And that was based upon the benefit of the doubt, which would have been, essentially, that there was a misdiagnosis. No, it wasn't. It was based upon it. All these are based upon the weighing of the evidence. The Board, in 1986, weighed all the evidence that existed at that time. And reached a different decision from what the Board had. I'm sorry, Your Honor? Yes. And ultimately, the decision which now benefits the veteran is different from the earlier decision. Based upon the evidence that then existed in the 1995 Board, took the decision back to an effective date of 1989, which is when that evidence, that claim was filed. The claim streak started in 1989. When did his service end? His service ended in 1971. He was in service from 1969 to 1971. Mr. Austin, how much of this is before us? I hear you discussing a lot of facts here. Your Honor. This is kind of the point I was having with Mr. Carpenter as well. A lot of what Judge Plager characterized as the second issue seems to be factual. It is factual, Your Honor. And I never did get to judge Plager's second issue. It's factual because in 2006, the Board concluded, the Board looked at the Board's decision in 1986 and stated that the Board made a factual determination on the merits. Your Honor, it's quite correct that that is not within the jurisdiction of this Court to review that. And this Court directly addressed that issue in the Price case, which we cite in our brief. Now, the Price case is not a precedential decision. It's a decision of this Court, but it's not precedential. And in Price, the Court said that when one Board looks back upon another Board decision and decides that it was a merits determination, it's not a decision of this Court to review and make a factual determination on the merits.   And in the case of Price, the Court said that the Board did not make a factual determination. That's a distinction. But Price, is that the non-precedential one? Yes. Okay. Price is non-precedential. But let me pick up Judge Newman's point one step further, if I may, and that is tying it back to the rule of law. The rule of law being, should we apply the Williams principle to a decision at the Board of Appeals level? That's the rule of law. That's the issue. Let's assume that as a general proposition, we think it's fair to have a rule of law, even at the Board of Appeals level, that says we subsume the earlier decision so long as the later decision provides adequate notice. That's the general phrase.  Absolutely. Should we make an exception as a matter of law to that rule of law for a veteran? The veteran in this case had, I don't want to sound unkind, but he had obviously significant emotional or mental issues. PTSD is what he was given 100 percent of later. Later. Later. Over time. Later. In the 86th decision, one can ask the question, was he really, there's no question that his PTSD relates back to his service, otherwise he's not going to get any payment, right? It relates back to 6971. So clearly the condition was ongoing. The Veterans Administration simply hadn't decided it was significant enough. Okay. So we have a veteran with an emotional or psychological difficulty, and should we have a rule of law that says an exception to the Williams application is where the veteran is not mentally capable and is not represented by counsel at that time? Was he represented by counsel at the 86th event? I believe he was represented, certainly not by Mr. Carpenter, but by a veterans organization at the time. So had he been represented by Mr. Carpenter, I'm sure none of this would have occurred. He would not have had the problem. But I don't, it's not clear from the record that he was represented by counsel, and should we take that into account in applying the Williams case at the Board of Appeals level? Well, Your Honor, the issue you raise I don't think has anything specific to the board issue. It would relate whether it was at an RO level or whether it was at the board level. There's nothing unique about it being at the board level. But that's why notice is such a key issue here, and is the claimant on notice. And what the Williams court said, and that's why we took issue, and it may be a semantic difference with whether this is really an implicit denial case. The Williams court looked at the substance of the case, and no veteran reading this decision could come to the conclusion that the board was not denying service connection for his nervous condition or his PTSD. And that's true irrespective of whether it's the 85 decision that was on appeal or the 73 decision. So if you want to take Your Honor's logic in, you could say that no board decision would ever put him on notice because he's not going to be able to make the distinction between the 85 decision and the 73 decision. What we assume from notice of the 86 board decision is it put Mr. Jones on notice that the board was denying his claim for service connection between his mental condition, nervous condition, and PTSD. Is that assumption a question of fact or a question of law? Well, it's a question of- Putting him on notice. Well, that's the issue of law. That's the premise of the implicit denial rule. I mean, that's what Adams is based upon. That's why in Adams and in Deshotel, which are the two, what I would call the true core implicit denial cases, it's a different issue because there are different substantive claims. There's two different hard claims. One would have been endocarditis, and one would have been valvitis in the Adams case, for instance. And the board and the ORA only addressed one of those two. Here, there's only one claim, which is why it's like Williams and perhaps not an implicit denial case. There's only one claim. Well, it seems to me that Williams is a specific application of the general principle of Adams, but we don't need to go- We don't need to go there. We don't need to decide that. I would, if Your Honor would- In the Williams case, there was no counsel at the RO level, which became the binding principle there, right? I believe that's true, Your Honor. I believe that. Does that help us at all with the problem that Judge Plager was raising? I think it does. I think it does. I think that the whole concept of notice goes right to that issue of is it fair? Is it fair to say- That's the question. Would it be fair in a case like this to say he was actually on notice as a result of the 86 decisions? Yes. And the answer to that is yes, Your Honor, because, I mean, if you look at that language, it's on page 55 of the joint appendix. There's a blanket statement that service connections, and two different pages on that, two different places on that page, that entitlement to service connection is being denied. And the board's decision in 1986 goes through all the evidence. And there is, and the real problem with this case, the reason that all the benefits were denied up until 1995 is there was very little evidence on the merits. Of course, the board in that case was really focusing on whether there was any new evidence. Well, that's the issue. That's kind of the point that Mr. Carpenter gave to us. He said they were looking at a little different question. It's a slightly different question, and the price case goes into this, but, again, that's not my precedent. But that's why it's important that it be a merits determination. But it's very hard to create a scenario where, you know, sort of this new and material evidence question is looked at in a vacuum. In order to determine whether there's new and material evidence under the- You're saying they had to look back and see the old. Absolutely. And in this case, they actually made the conclusion that there was new and material evidence. There's part of it on the board decision at page 53, a reopened claim. So the decision is made that there was new and material evidence. Then, once there is, you have to say, well, is there- Is it new and material enough such that you would reverse the decision? And the answer is no. And to do that- And the decision makes that clear. They looked at all the evidence and said there is no service connection. I mean, it's not like it's done in a vacuum and said we're just going to look at this new evidence. And, yeah, we really believe there was service connection based on the earlier evidence, but we want to put up blinders to that. That's just not what happened here. And, again, the price case goes into that also. Final thoughts for us, Mr. Ostman? I have nothing further, Your Honor, and I suppose if there's any further questions, we would just ask the decision of the Court of Appeals. Thank you. Mr. Carpenter, you have a little more than five minutes remaining. Thank you very much, Your Honor. I'd like to focus on what the 1986 board decision did. Good. I want you to do that because the issue stated in the 1986 board decision is entitlement to service connection for residuals of exposure to Agent Orange and for a nervous condition. That's correct. And they talk about PTSD in there as well. That's right. So it seems to me that board decision is pretty broad, isn't it? Except, Your Honor, you have to understand that the claim… This is 45. 45. It depends. And I also should note that it indicates he was represented by the American Legion on that same page, so that he was not represented by counsel in the 1986 board decision. But… What does it mean to say he was represented by – that the whole American Legion didn't show up? Who was there? Do we know? No, we don't. It just says the American Legion. But they have designated representatives that regularly attend these hearings and represent in written pleadings to the board. Okay. Or in the hearing, it appears that there was an actual hearing in this case based upon the notations at page 45 of the record. But in this case, Your Honor, an allegation was made that the post-traumatic stress disorder somehow was a product of the Agent Orange exposure. And that was the theory of the claim that was presented for the first time. And that's important here, Your Honor, because if you go to the findings of fact at page 54, it indicates that the originating agency in 1977 denied the Veteran of Service connection – excuse me, notified the Veteran of Service connection was denied for nervous condition. It makes no reference to what happened in 1974. And if, in fact, as has been suggested, that there was a review of the entire record, then the review of the entire record would have disclosed not only was there a decision, but there was a timely notice of disagreement. And if there was a timely notice of disagreement, the appropriate action in 1986 would have been for the board to remand for the issuance of a statement of the case. So clearly, this decision did not extinguish the appeal. It did not resolve the appeal that was initiated by Mr. Jones in 1974. And that's part of the fundamental fairness here. It did not expressly resolve the appeal, Mr. Carpenter, but the rule of Williams is that it could impliedly resolve it. And the rule of Williams is based upon a claim, Your Honor, not based upon a statutorily – You're assuming that Williams applies for purposes of this discussion at the Board of Appeals level. Yes, Your Honor. But I don't believe, even if you do, that you can assume that Williams applies to a pending appeal, because Williams did not involve a pending appeal, an appeal that had been initiated. The court below, in Myers, established a rule of law that when you have a pending appeal in precisely the same fact set as is presented in Mr. Jones' case, then you wait until there is a final resolution of the adjudication of the merits, because it is not until that time that the matter is fully decided. How do you read this sentence on page 54? It is apparent that a new factual basis has not been established by the evidence added to the record since 1977. That all that was dealt with here was from 1977 to the present. That nothing in this Board decision dealt with the original decision or the pending appeal of the 1974 decision. That the focus of this Board decision can only have put Mr. Jones on notice of what happened post-1977. But the Board in 2006 said exactly the opposite. That's correct, Your Honor. And the court below extended the implicit denial rule to apply to pending appeals, something that had not happened before, and in fact was contrary to the rule that was established in Myers. It's not quite correct, is it, Mr. Carpenter, that the 86 decision only dealt with what happened after 1977? Look at findings of fact number 2 on page 54 of the record. Yes. It says the originating agency in 1977 notified the veteran that service connection was denied for a nervous condition. Right. So that's a comment about the 1977 State of Affairs. That's correct. And that is a misstatement of law if you suggest that that means that there was final action in 1977 with that notice. That 1977 notice would not have been final because when he received notice that the 1974 decision had been denied, he filed a timely notice of appeal. Okay. Thank you very much, Your Honor. Thank you, Mr. Carpenter.